UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AGNES XIE,

                                    Plaintiff,

                    -v-

CARUSO, SPILLANE, LEIGHTON,
CONTRASTANO, SAVINO &
MOLLAR, P.C., DANIEL J. SAVINO,
JR., ESQ., and VALERIE MARIE De-
PEPPO-MALLOY, ESQ.,

                                    Defendants.

18-CV-12092 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

        Plaintiff Agnes Xie filed this action against Defendants Caruso, Spillane, Leighton,

Contrastano, Savino & Mollar, P.C., Daniel J. Savino, Jr., Esq., and Valerie Marie de Peppo-

Malloy, Esq., asserting claims for state-law legal malpractice, breach of contract, breach of the

implied covenant of good faith and fair dealing, breach of fiduciary duty, and fraud relating to

Defendants' representation of Xie before the New York State Workers' Compensation Board.

(Dkt. No. 28.)  Before the Court is Defendants' motion to enforce a $55,000 settlement in

principle in this matter.  For the reasons that follow, Defendants' motion to enforce the

settlement agreement is denied.

**I.    Background**

        The following facts are drawn from Xie's written submissions, which this Court

construes liberally given her *pro se* status, *see Massie v. Metro. Museum of Art*, 651 F. Supp. 2d

88, 93 (S.D.N.Y. 2009), Defendants' pleadings, and the emails and other documents attached to

the parties' filings.

In December 2018, Xie, initially proceeding *pro se*, commenced a legal malpractice action against Defendants relating to their representation of her in a hearing before the New York State Workers' Compensation Board.  (Dkt. No. 1.)  The following month, an attorney, Andrew Lavoott Bluestone, filed an appearance on Xie's behalf.  (Dkt. No. 4.)  In March 2019, he filed an amended complaint.  (Dkt. No. 28.)

The parties engaged in discovery beginning in 2019, requesting and being granted several extensions due, among other things, to the Covid-19 pandemic.  Meanwhile the parties engaged in settlement discussions under the direction of Magistrate Judge Sarah L. Cave as well as through counsel directly.

By January 2021, the parties appeared to be ready to settle.  (Dkt. No. 81-3.)  On January 21, Xie informed her lawyer, Andrew Bluestone, via email: "I agree to accept $47500 net to me to settle the case."  (Dkt. No. 83-1 at 9.)  On the same day, Bluestone informed Defendants' counsel by email that his client would settle for $55,000, accounting for his own fees of $7,500. (*Id.* at 8.)  The next morning, January 22, Defendants' counsel confirmed by email that her clients "consented to the settlement of this matter for $55,000, which we agreed upon last night" and asked Bluestone to "[p]lease forward the closing papers."  (Dkt. No. 81-3 at 3.)

On January 25, Xie's counsel submitted a joint letter to the Court stating that "we have reached a resolution of the claims in this matter and are now preparing settlement papers between us" and requesting that the Court cancel a conference scheduled for the following day. (Dkt. No. 45.)  On January 26, this Court issued an order dismissing the case based on the settlement in principle, subject to reopening within 30 days. (Dkt. No. 47.)

On January 29, Xie informed Bluestone via email that she was "caught in surprise" by the dismissal order.  (Dkt. No. 90 at 2.)  She did not, however, express any dissatisfaction with the

settlement amount.  *Id.*  On February 16, 2021, Defendants' counsel sent Bluestone the first draft of the formal settlement agreement, which Bluestone provided to Xie.  (Dkt. No. 81-3 at 17.)  On February 18, Xie sent back a revised draft that incorporated language stating that she would not have any tax liability for the settlement proceeds.  (*Id.* at 28.)  The tax language would become the ultimate sticking point in the settlement negotiations.

As the 30-day deadline for reopening the case approached, Xie requested permission to file directly on ECF and sought additional time to finalize the settlement.  (Dkt. Nos. 48, 49, 50.)

By April 7, Defendants proposed a third draft that incorporated new language to address Xie's concerns about the tax status of the settlement proceeds.  (Dkt. No. 81-3 at 40.)

By April 8, Xie offered a counterproposal—the fourth draft—with further changes.  (*Id.* at 51.)  On May 5, Defendants rejected the changes in this fourth version.  (*Id.* at 63.)  Defense counsel wrote to Bluestone, expressing consternation that "[Xie's] most recent changes are now even more broad."  (*Id.*)  Negotiations broke down over four provisions: Defendants rejected (1) an "Exception and Reservation" clause stating that they would be in breach of the settlement agreement if they issued Xie an IRS Form 1099; (2) a clause stating that the settlement sum would not be treated as part of Xie's gross income; (3) a clause that would bind Defendants' insurance company to accept Xie's insurance claims; and (4) a clause that would require the losing party to pay attorney's fees if there was litigation over the settlement amount.  (*Id.* at 64-70.)

Settlement negotiations did not progress further.  On May 6, 2021, Xie terminated Bluestone and later successfully petitioned the Court to reopen the case.  (Dkt. No. 90 at 9.)  Defendants now seek to enforce a $55,000 settlement.  No formal settlement agreement was ever signed.

## II.   Legal Standard

It is well settled that a "district court has the power, and indeed the duty, to enforce summarily, on motion, a settlement reached in the case pending before it." *Lindner v. Am. Express Corp.*, No. 06 Civ. 3834, 2007 WL 1623119, at *3 (S.D.N.Y. June 5, 2007).

The Second Circuit applies the four-factor *Winston* test to determine "whether . . . parties intended to be bound to an oral or unsigned settlement agreement." *Aberra v. City of New York*, 18 Civ. 01138, 2020 WL 11772386, at *5 (S.D.N.Y. July 31, 2020) (citing *Winston v. Mediafare Ent. Corp.*, 777 F.2d 78, 80 (2d Cir. 1985)).  The four *Winston* factors are: "(1) whether there has been express reservation of the right not to be bound in the absence of a writing; (2) whether there has been a partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing."  777 F.2d at 80.  This test is meant to discern intent, since "[i]n any given case it is the intent of the parties that will determine the time of contract formation." *Id.*  Under New York law, applicable here, the proponent of a contract has the burden of proving the existence of a binding contract by a preponderance of the evidence. *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998).

## III.   Discussion

Defendants argue that they are entitled to enforce the settlement in principle of $55,000, as recorded in the email correspondence between their counsel and Bluestone.  (Dkt. No 82.) While Defendants cite general principles of contract law, they do not address the *Winston* factors or whether they are fulfilled here.  (*See generally id.*)  Plaintiff, on the other hand, contends that no binding settlement agreement was ever reached under *Winston*.  (*See generally* Dkt. No. 90.) For the reasons explained below, the Court concludes that Defendants have not satisfied their

burden of proving, by a preponderance of the evidence, the existence of a binding settlement agreement.

### A.      Factor One: Reservation of the Right Not to Be Bound

The first *Winston* factor concerns whether either party expressly reserved the right not to be bound prior to the execution of a written settlement agreement.  This factor is considered "the weightiest of the four."  *Brady v. N.Y. Police Dep't*, No. 08 Civ. 3572, 2011 WL 534116, at *1 (E.D.N.Y. Jan. 5, 2011); *see also Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir. 1989) (courts "need look no further" than the first *Winston* factor where an intent not to be bound is readily apparent).  Despite the use of the term "express," this factor also considers whether the facts and circumstances of the case demonstrate an implied reservation of the right not to be bound.  Such factors include statements promising that settlement funds would not be disbursed until the execution of a written agreement, *Winston*, 777 F.2d at 78, and the presence of a merger clause in the draft settlement documents.  *Ciaramella v. Reader's Dig. Ass'n, Inc.*, 131 F.3d 320, 324 (2d Cir. 1997).

Here, a reservation of the right not to be bound in the absence of a final, written settlement agreement is apparent from the terms of the draft agreements.  First, the settlement funds were to be released only after the final agreement was executed.  This was also the case in *Ciaramella*, where the court found that contractual language obligating the defendant to deliver payment only after the effective date of the signed settlement document indicated that the parties did not intend the settlement agreement to be binding until fully executed.  131 F.3d at 324. Here, the draft terms were clear about when the settlement money was to be paid out: "The Settlement Sum shall be paid within 30 days after legal counsel for Defendants receives (a) the *fully executed* Confidential Settlement Agreement and General Release; (b) the Stipulation of

Discontinuance; and (c) the tax identification number of the Bluestone Law firm." (Dkt. No. 81-3 at 65 (emphasis added).)

Second, all versions of the Xie draft settlement agreements, including the final one, had a merger clause. The Second Circuit has advised that "[t]he presence of such a merger clause is persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement." *Ciaramella*, 131 F.3d at 324. The merger clause in the agreements at issue here stated, "Each of the Parties acknowledges that this Agreement sets forth the entire understanding of the Parties with respect to the subject matter hereof. Further, this Agreement supersedes any and all other agreements, either oral or in writing, between or among the Parties hereto with respect to the subject matter hereof." (*E.g.* Dkt. No. 81-3 at 69.) This term indicates that the parties intended to be bound only at the point of signing a final written agreement.

The first *Winston* factor weighs against enforcing the settlement in principle.

### B.     Factor Two: Partial Performance

The partial performance factor has "the least sway with the court." *Walker v. City of New York*, No. 05 Civ. 0004, 2006 WL 1662702, at *8 (E.D.N.Y. June 15, 2006). Courts have considered various factors that indicate partial performance, including payment of at least some part of the settlement amount and mutual cessation of litigation activities.

Favoring Xie is the fact that Defendants have not paid her any part of the alleged $55,000 settlement. In *Ciaramella*, the court concluded that there was no partial performance where defendant "paid no money to Ciaramella before the district court ordered the settlement enforced," given that the payment was a "basic element[] of consideration that would have been due to Ciaramella under the settlement agreement." 131 F.3d at 325. The same is true here: Defendants have transmitted no payments to Xie.

Favoring Defendants is the fact that the parties abandoned litigation activities because they believed a settlement was imminent.  "Numerous courts have held that partial performance is satisfied where there has been a cessation of litigation activities following a settlement on the record." *Jericho Grp. Ltd. v. Mid-Town Dev. Ltd. P'ship*, WL 11263660, at *9 (E.D.N.Y. Dec. 5, 2016), *report and recommendation adopted*, No. 14-CV-2329, 2017 WL 4221068 (E.D.N.Y. Sept. 22, 2017) (internal quotation and citation omitted).  Though the settlement in principle here was transmitted via email rather than on the official record, the parties did abandon discovery and trial preparation on the assumption that the matter was effectively settled.  (Dkt. No. 79 at 11.)

Overall, the Court finds that the partial performance factor is neutral.

### C.      Factor Three: Material Terms

The third factor asks whether "all of the terms of the alleged contract have been agreed upon." *Winston*, 777 F.2d at 80.  To that end, courts determine whether there was "literally nothing left to negotiate." *Id.*  The Second Circuit has strictly construed that standard.  "The existence of even 'minor' or 'technical' points of disagreement in draft settlement documents [was] sufficient to forestall the conclusion that a final agreement on all terms had been reached." *Ciaramella*, 131 F.3d 320 at 325 (quoting *Winston*, 777 F.2d at 82–83).  A settlement in principle is not final where material terms that form part of the plaintiff's consideration for dropping her legal claims are not agreed upon. *Id.*

Xie and Defendants had multiple substantive points of disagreement that were still unresolved when negotiations broke down over the fourth draft of the settlement agreement. Xie's proposed changes regarding the Exception and Reservation clause, whether the settlement amount would be counted as part of her gross income, and the representations from Defendants'

insurance company were all material terms that formed part of the consideration she intended to exchange for the $55,000 settlement award.

Defendants argue that Xie's position regarding the tax representations was "unreasonable," "improper," and "likely unenforceable." (Dkt. No. 82 at 9.) Though Defendants may be correct, *Winston* requires the Court to defer to Xie's intent: "It is not for the court to determine retrospectively that at some point in the evolution of a formal document that the changes being discussed became so 'minor' or 'technical' that the contract was binding despite the parties' unwillingness to have it executed and delivered. For the court to do so would deprive the parties of their right to enter into only the exact contract they desired." *Winston*, 777 F.2d at 83. The outcome, then, does not turn on the reasonableness of Xie's demands, but rather on her right to be bound only by a settlement reflecting the precise concessions she was willing to make.

The Court concludes that the third *Winston* factor weighs against enforcing the alleged settlement agreement.

### D.     Factor Four: Agreement Usually Committed to Writing

The final *Winston* factor is whether the agreement at issue is the type of agreement that would normally be reduced to writing. *See Winston*, 777 F.2d at 83. "Settlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court." *Ciaramella*, 131 F.3d at 326. The complexity of the terms of the agreement and the period of time covered by the settlement are considerations in analyzing this factor. *See, e.g.*, *Oparah v. N.Y.C. Dep't of Educ.*, 2015 WL 4240733, at *7 (S.D.N.Y. July 10, 2015). This factor has low relevance here because the parties are not disputing a purely oral agreement. If anything, this factor arguably favors Defendants because the settlement contemplated here is not complex: it concerns a single $55,000 payment that would resolve all of Plaintiffs' legal claims and close the

case. *See, e.g., Walker v. City of New York*, 2006 WL 1662702, at *9 (E.D.N.Y. June 15, 2006) ("The settlement agreement in this case was for one lump-sum of $7,500.00. There was nothing complex about this agreement.").

The fourth *Winston* factor, therefore, favors enforcement of the settlement.

## IV.     Conclusion

Having considered all of the relevant facts and circumstances, and having weighed the *Winston* factors, the Court concludes that Defendants have failed to establish the existence of a binding settlement agreement.  Though the second factor is neutral and the fourth favors Defendants, most relevant to the Court's determination are the first and third *Winston* factors. These factors go to whether Plaintiff Xie intended to be bound by the mere dollar amount component of the settlement agreement.  Because Defendants have failed to show the requisite intent, the Court cannot enforce the settlement in principle.[1]

For the foregoing reasons, defendants' motion to enforce the settlement is DENIED.[2]

The Clerk of Court is directed to close the motion at Docket Number 80.

SO ORDERED.

Dated: September 29, 2022
        New York, New York

J. PAUL OETKEN
United States District Judge

---

[1] Separately, Xie contests the validity of the settlement in principle by alleging that Bluestone "coerced" her into accepting the $55,000 settlement. (Dkt. No. 90 at 3, 5, 7, 8.)  As stated on the record in the September 8, 2021 phone conference, the Court does not find that claim to be credible. (Dkt. No. 78.)  Xie's claim of coercion and apparent dissatisfaction with the settlement amount therefore have no bearing on the Court's decision here.

[2] Bluestone has asked the Court to enforce the settlement in principle and to approve a charging lien for the value of his services on Xie's case. (Dkt. No. 83.)  The Court will defer consideration of the lien request until this case is resolved on its merits or settled.