UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AGNES XIAOHONG XIE,
Plaintiff,

-v-

CARUSO, SPILLANE, LEIGHTON, CONSTRASTANO, SAVINO & MOLLAR, P.C., *et al.*,
Defendants.

18-CV-12092 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Agnes Xie commenced this action against Defendants Caruso, Spillane, Leighton, Constrastano, Savino, & Mollar, P.C., Daniel J. Savino, Jr., Esq., and Valerie Malloy, Esq. (collectively, "Defendants") in 2018, asserting claims of legal malpractice, breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and fraud arising out of Defendants' representation of Xie before the New York State Workers' Compensation Board. (ECF No. 28.) Presently before the Court are Defendants' motion to enforce a settlement in principle reached during a March 20, 2025 settlement conference and a request for a charging lien asserted by Xie's former counsel, Andrew Bluestone. (*See* ECF Nos. 59, 180.) For the reasons that follow, Defendants' motion to enforce the settlement and Bluestone's request for a charging lien are granted.

## I. Background

The Court assumes familiarity with the factual background of this case as set forth in the Court's 2022 opinion and order denying Defendants' previous motion to enforce a settlement. *See Xie v. Caruso, Spillane, Leighton, Contrastano, Savino & Mollar, P.C.*, 632 F. Supp. 3d 262, 265-67 (S.D.N.Y. 2022).

Following the Court's denial of the previous motion to enforce a settlement (ECF No. 93), the parties conducted discovery through June 2024 (ECF No. 180-15 at 11). With the parties' consent, on June 14, 2024, the Court issued an order referring the case to Magistrate Judge Sarah L. Cave for purposes of settlement. (ECF No. 117.) A settlement conference was scheduled for March 20, 2025, for which Xie was appointed pro bono counsel. (ECF Nos. 119, 130.)

On March 20, 2025, at the end of the settlement conference, Judge Cave stated on the record that the parties "reached an agreement in principle to resolve all of Dr. Xie's claims against the defendants in this action." (ECF No. 156 at 3.) Judge Cave identified the five material settlement terms as (1) "a settlement payment from the defendants in the amount of $200,000," (2) "confidentiality," (3) "non-disparagement," (4) "mutual releases," and "payment within 30 days of execution." (*Id.* at 3-4.) In addition, Judge Cave instructed the parties "to prepare a written settlement agreement promptly" (*id.* at 3) and "to work to include language that characterizes the settlement payment in the way that's most tax favorable or has the most minimal tax consequences to Dr. Xie" (*id.* at 4). Judge Cave asked Xie if she "correctly stated the material terms of the agreement in principle." (*Id.* at 4.) Xie replied: "Yes, Your Honor." (*Id.* at 4.) Judge Cave then asked Xie if she, "in fact, agree[d] to those terms." (*Id.* at 4.) Xie replied: "Yes." (*Id.* at 4.) Defendants also confirmed on the record that Judge Cave had correctly stated the material terms of the agreement in principle and that they agreed to those terms. (*Id.* at 4:.)

One week after the settlement conference, on March 27, 2025, Defendants emailed Xie's pro bono counsel a draft settlement agreement. (ECF 180-15 at 13.) On March 28, 2025, Xie filed a letter with the Court confirming that she was "proceeding with the settlement agreement"

reached on March 20, 2025. (ECF No. 160 at 1.) The following day, Xie filed a second letter again "confirm[ing] that the parties reached an agreement in principle with basic principle of material terms." (ECF No. 161 at 1.)

The parties traded written drafts of a settlement agreement into May 2025. On May 20, 2025, to address Xie's persistent concerns about being issued a Form 1099 in connection with the settlement, Defendants included the following language:

> The Parties agree and acknowledge that it is their mutual understanding that the Settlement Payment represents the settlement of claims arising from Plaintiff's underlying NYS workers' compensation claims for personal physical injuries as described in Section 104(a)(1) of the Internal Revenue Code.

(ECF No. 180-11 at 14, 17-18.) On June 12, 2025, after continuing efforts to finalize the written agreement, Xie advised Defendants through her counsel that her continued commitment to the settlement was now conditional on Defendants' acceptance of her newly proposed "essential execution terms," which included an explicit representation that no Form 1099 would be issued to her. (ECF No. 180-12 at 2-3.) Xie warned that if Defendants did not agree to these new terms, she "may need to reserve [her] rights" and "decline execution." (*Id*. at 7.) After a July 2, 2025 conference before Judge Cave, the parties remained at an impasse over the inclusion of Xie's proposed tax language. (ECF No. 180-15 at 17.) Because negotiations over the language of the written settlement agreement continued to stall, Judge Cave scheduled a conference for August 6, 2025. (*Id*. at 18.) Xie, however, did not provide Defendants with new proposed language concerning the Form 1099 issue by the August 6 deadline, and missed four subsequently extended deadlines to do so. (*See generally* ECF No 180-13.) Judge Cave set the final deadline for submitting proposed settlement language for November 10, 2025. (*Id*. at 10-11.) Xie did not submit new settlement language by that deadline, and an additional request for

an extension was denied. (*Id.*) On November 13, 2025, Plaintiff's pro bono counsel withdrew "upon the completion of all settlement proceedings." (ECF No. 176 at 1.)

## II. Procedural History

On November 26, 2025, the parties submitted a joint letter requesting a stay of discovery to allow Defendants to file a motion to enforce the settlement reached at the March 20, 2025 settlement conference. (ECF No. 178.) This Court permitted Defendants to file the motion and stayed the case pending its resolution. (ECF No. 179.)

On December 19, 2025, Defendants filed a motion to enforce the settlement, with accompanying exhibits and a supporting memorandum of law. (*See generally* ECF No. 180.) Xie filed an opposition on January 15, 2026 (ECF Nos. 181-82), as well as a supplemental brief on January 20, 2026 (ECF No. 183). After letter briefing from the parties related to the permissibility of Xie's supplemental brief, the Court gave Xie until February 6, 2026 to file a consolidated supplemental opposition (ECF No. 188), which Xie timely filed (ECF No. 190). Defendants filed their reply on February 20, 2026. (ECF No. 191.)[1]

## III. Legal Standard

"A district court has the power, and indeed the duty, to enforce summarily, on motion, a settlement agreement reached in a case pending before it." *Lindner v. Am. Express Corp.*, No. 06-CV-3834, 2007 WL 1623119, at *3 (S.D.N.Y. June 5, 2007) (citing *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir.1974)). "It is well established that settlement agreements are contracts and must therefore be construed according to general principles of contract law." *Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002) (cleaned up). An

---

[1] On February 24, 2026, Xie moved for leave to file a sur-reply in further opposition to Defendants' motion. (ECF No. 192.) For substantially the reasons outlined in Defendants' opposition (*see* ECF No. 193), Xie's motion for leave to file a sur-reply is denied.

enforceable contract exists "when the parties have reached complete agreement (including the agreement to be bound) on all issues perceived to require negotiation." *Murphy v. Inst. of Int'l Educ.*, 32 F.4th 146, 150 (2d Cir. 2022) (quoting *Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co.*, 670 F. Supp. 491, 498 (S.D.N.Y. 1987)). "In any given case it is the intent of the parties that will determine the time of contract formation. To discern that intent a court must look to 'the words and deeds [of the parties] which constitute objective signs in a given set of circumstances.'" *Winston*, *v. Mediafare Ent. Corp.*, 777 F.2d 78, 80 (2d Cir. 1985) (quoting *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir. 1984)).

Additionally, a settlement agreement need not be memorialized in writing to be an enforceable contract. *See, e.g.*, *id.* ("Under New York law, parties are free to enter into a binding contract without memorializing their agreement in a fully executed document.").[2] Parties are free to contract orally, and the mere intention to subsequently formalize their agreement in writing does not preclude contract formation at the time of oral agreement. *Id*. To determine whether parties intended to be bound by an alleged oral agreement in the absence of a fully executed written document, the Second Circuit has outlined four factors to consider: "(1) [W]hether there has been express reservation of the right not to be bound in the absence of a writing; (2) whether there has been a partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is

[2] "Actions to enforce settlement agreements are essentially state-law contract claims that are controlled by the forum state's substantive law." *In re Guedes*, No. 17-30067, 2019 WL 2866556, at *5 (Bankr. D. Conn. July 2, 2019) (citing *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 134 (2d Cir. 2011)). Here, the forum state is New York, and so New York state law governs. Moreover, "[t]he parties' briefs assume that New York law controls, and such implied consent . . . is sufficient to establish choice of law." *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (quotation marks omitted).

the type of contract that is usually committed to writing." *Id.*; *see, e.g.*, *Murphy*, 32 F.4th at 151; *Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.*, 145 F.3d 543, 549 (2d Cir. 1998).

Under New York law, the proponent of a contract has the burden of proving the existence of a binding contract by a preponderance of the evidence. *See First Invs. Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998).

## IV. Discussion

### A. Factor One: Reservation of the Right Not to Be Bound

The first *Winston* factor considers whether either party expressly reserved the right not to be bound to an oral agreement prior to the execution of a written document. This factor is considered "the weightiest of the four." *Brady v. N.Y. Police Dep't*, No. 08-CV-3572, 2011 WL 534116, at *1 (E.D.N.Y. Jan. 5, 2011); *see also Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir. 1989) (courts "need look no further" than the first *Winston* factor where an intent not to be bound is readily apparent). "Under New York law, parties are free to bind themselves orally, and the fact that they contemplate later memorializing their agreement in an executed document will not prevent them from being bound by the oral agreement." *Ciaramella v. Reader's Dig. Ass'n, Inc.*, 131 F.3d 320, 322 (2d Cir. 1997).

Here, the parties reached a verbal agreement at the end of their March 20, 2025 settlement conference. (*See generally* ECF No. 156.) On the record, the parties accepted all five material terms of the settlement, raised no objections, and declined to put anything else on the record, even after prompting by Judge Cave. (*Id*. at 3-5.) Xie then repeatedly affirmed her intent to be bound by the oral contract in letter filings to the Court. In a letter filed March 28, 2025, Xie wrote to "confirm that [she] is proceeding with the settlement agreement" and stated that she "accept[ed] the settlement voluntarily." (ECF No. 160 at 1.) The next day, Xie again "confirm[ed] that the parties reached an agreement in principle with basic principle of material

terms." (ECF No. 161 at 1.) Nothing in this record suggests that any party reserved the right not to be bound by the oral agreement.

Xie argues that the merger clause contained in the proposed settlement drafts constitutes an express reservation not to be bound by the oral agreement. (ECF No. 190 at 2.) She also contends that the existence of a merger clause "mirrors the 2021 scenario" in which this Court denied Defendants' previous motion to enforce. (*Id.*) But courts have routinely held that "a boilerplate merger clause subsequently inserted into a draft settlement agreement ha[s] no bearing on the question of the parties' intent when entering into [an] oral [settlement] agreement." *Shim-Larkin v. City of New York*, No. 16-CV-6099, 2025 WL 2751224, at *4 (S.D.N.Y. Sep. 29, 2025) (quotation marks omitted); *see also Acun v. Merrill Lynch, Pierce, Fenner, & Smith*, No. 18-CV-7217, 2020 WL 3002225, at *3 (S.D.N.Y. Jan. 15, 2020) (rejecting the argument that the existence of a merger clause in written settlement agreement drafts "proves the parties' intent not to be bound in the absence of a written agreement" because the merger clause "appear[ed] in papers prepared *after* the agreement reached on the record at the . . . settlement conference, and does not bear on whether the parties intended to be bound at that time"), *report and recommendation adopted*, No. 18-CV-7217, 2020 WL 995887 (S.D.N.Y. Mar. 2, 2020), *aff'd sub nom. Acun v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 852 F. App'x 552 (2d Cir. 2021); *Alvarez v. City of New York*, 146 F. Supp. 2d 327, 336 (S.D.N.Y. 2001) (Chin, J.) ("Given the strong indication that all parties intended to be bound by the oral agreement, the fact that defendant's counsel added boilerplate language to an otherwise substantively identical version of the oral agreement does not undermine the evidence that the parties intended to be bound by the oral agreement." (cleaned up)). Moreover, this Court's denial of Defendants' prior motion to enforce the settlement rested on plainly distinguishable

facts. There, the parties had agreed to a settlement amount to resolve the case, but had neither discussed nor agreed to any other material terms. *Xie*, 632 F. Supp. 3d at 266. In the context of more preliminary settlement discussions, the existence of a merger clause may reasonably be interpreted as an implied reservation of right not to be bound by a prior oral representation. Here, to the contrary, Xie and Defendants confirmed—on the record and in open court—the material terms of the settlement and agreed to those terms. (ECF No. 156 at 3-4.) This is a clear manifestation of an intent to be bound.[3]

Next, Xie points to Judge Cave's directive to "work to prepare a written settlement agreement" as proof that the agreement was not final and created an implied reservation of a right not to be bound. (ECF No. 181 at 3.) But it is axiomatic that the parties' "freedom to contract orally remains even if the parties contemplate a writing to evidence their agreement" afterward. *Winston*, 777 F.2d at 80; *see also Doe v. Kogut*, 759 F. App'x 77, 80 (2d Cir. 2019) (summary order) (holding that, although the magistrate judge stated at the settlement conference that the agreement should be reduced to writing, the parties had already orally agreed to its terms and the reduction to writing "was only a formality"). "[T]he mere intention to commit the agreement to writing will not prevent contract formation prior to execution." *Winston*, 777 F.2d at 80. Nor does the fact that the agreement was "in principle" diminish its binding force, as Xie asserts. (ECF No. 190 at 3.) "A preliminary agreement is binding, despite the desire for a later formal document, when the parties have reached complete agreement (including the agreement

[3] Indeed, Xie first sent a letter to Defendants stating that she "*may* need to reserve [her] rights" and "decline execution" of the settlement if Defendants did not accept her newly proposed "essential execution terms" nearly three months after the March 2025 settlement conference. (ECF No. 180-12 at 3, 7 (emphasis added).) This only underscores the fact that Xie did not reserve her rights at the March 2025 settlement conference. *See Alvarez*, 146 F. Supp. 2d at 336 ("Having accepted the terms and conditions of the [oral] settlement agreement, plaintiff cannot now allege—after he has accepted the settlement agreement—that other terms remained.").

to be bound) on all issues perceived to require negotiation." *Suarez v. SCF Cedar, LLC*, No. 13-CV-7420, 2016 WL 6601547, at *2 (S.D.N.Y. Mar. 14, 2016) (cleaned up), *report and recommendation adopted*, No. 13-CV-7420, 2016 WL 6601549 (S.D.N.Y. Nov. 7, 2016); *see also HVN Clothing, Inc. v. Lomeway E-Com. (Luxembourg) Ltd.*, 636 F. Supp. 3d 451, 456 (S.D.N.Y. 2022) ("[A] preliminary settlement agreement may be binding even where it is designated by the parties only a settlement 'in principle.'"). There can be little dispute, based on their representations on the record, that the parties reached such a preliminary agreement at the settlement conference before Judge Cave.

Because there was no express or implied reservation of the right not to be bound by the oral contract, the first *Winston* factor weighs in favor of enforcing the settlement.

**B. Factor Two: Partial Performance**

The second factor, which has "the least sway with the court," considers whether there has been partial performance of the settlement agreement. *Walker v. City of New York*, No. 05-CV-0004, 2006 WL 1662702, at *8 (E.D.N.Y. June 15, 2006). "Several Courts have held that the partial performance element is satisfied if there has been a cessation of litigation activities following a settlement on the record." *Jericho Grp. Ltd. v. Mid-Town Dev. Ltd. P'ship*, No. 14-CV-2329, 2016 WL 11263660, at *9 (E.D.N.Y. Dec. 5, 2016) (quotation marks omitted) (collecting cases), *report and recommendation adopted*, No. 14-CV-2329, 2017 WL 4221068 (E.D.N.Y. Sep. 22, 2017). Other courts, however, have concluded that, in the absence of partial payment, a cessation of litigation that does not impose significant costs on the parties is insufficient to constitute partial performance. *See, e.g.*, *Santiago v. Agadjani*, No. 21-CV-7090, 2024 WL 4424240, at *9-10 (E.D.N.Y. Oct. 4, 2024) (finding no partial performance where "no payment was made, and the parties' cessation of litigation did not impose any costs," since "after the settlement conference, little activity beyond these enforcement proceedings has taken

place”); *Patel v. Long Island Univ.*, No. 17-CV-2170, 2023 WL 6211769, at *10 (E.D.N.Y. Sep. 25, 2023) (finding no partial performance where “no payment was made, and [Defendant’s] cessation of litigation did not impose any costs”), *aff’d*, No. 23-7381, 2024 WL 4763927 (2d Cir. Nov. 13, 2024). Although the Second Circuit has “not specifically addressed” whether the cessation of litigation and the memorializing of a settlement agreement on the record qualify as partial performance, it has concluded that, in any event, “the absence of partial performance is at best neutral” under *Winston*. *Acun v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 852 F. App’x 552, 555 (2d Cir. 2021) (summary order).

Defendants have not yet paid Xie any part of the $200,000 settlement amount. And though Defendants have now paused litigation activities for approximately seventeen months in reliance on the settlement in principle (ECF No. 191 at 9), that cessation in litigation activity has imposed only minimal costs, as the case was stayed shortly after settlement proceedings concluded to permit briefing on a motion to enforce. There has therefore not yet been any partial performance of the settlement other than the cessation of litigation activity. Accordingly, the Court concludes that the partial performance factor, as outlined under *Acun*, is neutral.

**C. Factor Three: Material Terms**

The third factor assesses “whether all of the terms of the alleged contract have been agreed upon.” *Winston*, 777 F.2d at 80. “That is, the Court must consider whether the settlement included all the terms that the parties perceived to require negotiation at the time the agreement was reached.” *Smith v. Home Depot U.S.A., Inc.*, No. 20-CV-04125, 2024 WL 1174288, at *10 (E.D.N.Y. Mar. 19, 2024) (quotation marks omitted).

Xie asserts that Judge Cave’s instruction that the parties “work to include language that characterizes the settlement payment in the way that’s most tax favorable” to her demonstrates that certain material terms were left open for future negotiation. (ECF No. 156 at 4; ECF No.

181 at 4.) But at the March 2025 conference, Judge Cave expressly identified the material terms of the settlement as (1) "a settlement payment from the defendants in the amount of $200,000," (2) "confidentiality," (3) "non-disparagement," (4) "mutual releases," and (5) "payment within 30 days of execution." (ECF No. 156 at 3-4.) Xie and Defendants each agreed that Judge Cave correctly stated the material terms, agreed to the material terms, and declined to put anything further on the record when asked. (*Id*. at 4-5.) At no point did Xie object to Judge Cave's characterization of the material terms or seek to add to them.

Xie now contends that she "did not interrupt the Court out of courtesy" when Judge Cave outlined the material terms of the settlement because "the Court had conveyed that Defendants agreed to" specific assurances that the settlement was non-taxable and that no Form 1099 would be issued. (ECF No. 190 at 4.) But this argument is unavailing. Nothing in the record, nor in Judge Cave's careful conduct of settlement discussions, supports Xie's claim that she was misled by the Court as to the specific terms of the settlement. And even if confusion did linger about the material terms of the agreement, Xie made no effort to clarify those terms during her colloquy with Judge Cave. Instead, Xie, represented by counsel, affirmed on the record that Judge Cave's summation of the material terms was accurate and that she agreed to those material terms. (ECF No. 156 at 4.)

Additionally, Defendants have fully complied with Judge Cave's directive by including language in the settlement draft clarifying the parties' understanding that "the Settlement Payment represents the settlement of claims arising from Plaintiff's underlying NYS workers' compensation claims for personal physical injuries as described in Section 104(a)(1) of the Internal Revenue Code." (ECF No. 180-11 at 17-18.) That Defendants were not willing to make additional specific representations that the settlement would not be taxed and that a Form 1099

would not be issued—decisions that are dictated by the Internal Revenue Service, not Defendants—is no basis to preclude a settlement that the parties voluntarily agreed to in open court. *See U.S. Fire Ins. Co. v. Pierson & Smith, Inc.*, No. 06-CV-382, 2007 WL 4403545, at *3 (S.D.N.Y. Dec. 17, 2007) ("Defendant, by counsel, knowingly agreed to the conditions of settlement on the record; Defendant cannot now renege because of belatedly remembered conditions Defendant would have liked to include in the agreement."); *Acun*, 2020 WL 3002225, at *7 (enforcing an oral settlement agreement because "Plaintiff was present, engaged, and represented by pro bono counsel during settlement negotiations and indicated his assent on the record to the terms of the settlement, with no reservations or conditions attached").[4]

Because the parties agreed to all material terms of the oral settlement agreement, the third *Winston* factor weighs in favor of enforcement.

### D. Factor Four: Agreement Usually Committed to Writing

The fourth *Winston* factor addresses whether the agreement at issue is the kind of agreement that is typically reduced to writing. *See Winston*, 777 F.2d at 83. The Second Circuit has explained that "what *Winston* had in mind in this reference to a writing . . . is a written instrument whose status as a binding contract has been acknowledged either by signature or by express oral acceptance." *Acun*, 852 F. App'x at 556. "The in-court recitation of the terms of an oral settlement agreement, to which the parties personally assented to on the record, is 'akin to that of a memorializing writing.'" *Conway v. Healthfirst Inc.*, No. 21-CV-6512, 2024 WL

[4] Separately, Xie argues that—under existing case law and the Court's order denying Defendants' previous motion to enforce the settlement—tax characterization and reporting standards are material terms of a settlement agreement as a matter of law. (ECF No. 182 at 3; ECF No. 183 at 7.) But both *Manning v. New York Univ.*, 299 F.3d 156, 164 (2d Cir. 2002), on which Xie relies, and the Court's prior order, *Xie*, 632 F. Supp. 3d 269, made fact-specific determinations as to the material terms of the settlements before them, and neither supports such a categorical rule.

5359849, at *5 (S.D.N.Y. Aug. 8, 2024) (quoting *Acun*, 852 F. App'x at 556), *report and recommendation adopted*, No. 21-CV-6512, 2025 WL 307458 (S.D.N.Y. Jan. 27, 2025).

Here, the material terms of the settlement were made and accepted on the record in open court. It is therefore "as binding as an agreement memorialized in writing." *Id.* Nor are the terms of the settlement—which include a $200,000 settlement amount, confidentiality provision, non-disparagement provision, mutual releases, and payment within thirty days of execution—particularly complex. (ECF No. 156 at 3-4.) *Cf. Doe v. Kogut*, 759 F. App'x 77, 81 (2d Cir. 2019) (summary order) (concluding that a settlement requiring the plaintiff to release her claims and halt proceedings in exchange for a monetary payment and mutual non-disparagement agreement is not sufficiently complex to require a written contract).

Accordingly, the fourth *Winston* factor favors enforcement. Because the first, third, and fourth *Winston* factors each weigh in favor of enforcement—and the second *Winston* factor is neutral—the Court grants Defendants' motion to enforce the settlement agreement reached during the March 20, 2025 settlement conference.

## V. Charging Lien

Only the issue of the charging lien remains. On January 25, 2021, Xie's former counsel, Andrew Bluestone, informed the Court that the parties had reached a settlement in principle. (ECF No. 45.) The following day, the Court issued an order dismissing the case without prejudice, subject to reopening within thirty days. (ECF N0. 47.) Efforts to finalize a written settlement agreement, however, stalled over Xie's insistence that the agreement include language that she would incur no tax liability for the settlement proceeds. *See Xie*, 632 F. Supp. 3d at 266. The Court extended the deadline for reopening the case to May 3, 2021. (*See* ECF minute entry for 4/1/2021.) On May 5, 2021, Defendants rejected the changes in the parties' fourth proposed draft due to several new provisions proposed by Xie that related to her tax liability. *See Xie*, 632

F. Supp. 3d at 266. Xie directed Bluestone multiple times via email to move for another extension, but Bluestone declined, stating that her "position on language in the settlement agreement is frivolous and contrary to what the Judge told [her] was the norm or the acceptable language." (ECF No. 68 at 9.) On May 6, 2021, Xie terminated Bluestone as her counsel. (*Id.* at 7.) On May 8, 2021, Bluestone moved to enforce a charging lien under New York Judiciary Law § 475.[5] (*See* ECF No. 59.) After extensive briefing on the matter (*see generally* ECF Nos. 68, 69, 72, 73, 74, 83, 84, 87, 91), the Court deferred consideration of the request for a charging lien until the resolution of this case. *Xie*, 632 F.Supp.3d at 270 n.2.

In New York, "[t]he charging lien was created by the common-law courts as a device to protect an attorney by disabling clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained." *LMWT Realty Corp. v. Davis Agency Inc.*, 85 N.Y.2d 462, 469 (N.Y. 1995) (quotation marks omitted). When evaluating a motion for a charging lien, "the principal question presented is whether there was 'evidence of misconduct on the part of former counsel.'" *Villar v. City of New York*, 546 F. Supp. 3d 280, 290 (S.D.N.Y. 2021) (quoting *Pomerantz v. Schandler*, 704 F.2d 681, 683 (2d Cir. 1983) (per curiam)). If a client discharges an attorney without cause, the attorney is entitled to be paid in quantum meruit for the reasonable value of their services. *Casper v. Lew Lieberbaum & Co.*, No. 97-CV-3016, 1999 WL 335334, at *5 (S.D.N.Y. May 26, 1999). It is the client's burden to establish that their prior counsel was discharged for valid cause. *See Cronin v. Chabrowe*, 793 F.

[5] Section 475 provides that, "[f]rom the commencement of an action . . . in any court . . . the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come . . . . The court upon the petition of the client or attorney may determine and enforce the lien." N.Y. Jud. L. § 475.

Supp. 3d 458, 471 (E.D.N.Y. 2025). Moreover, "an attorney need not be counsel of record at the time a plaintiff receives judgment or settlement proceeds in order to have a lien on those proceeds, so long as the attorney was counsel of record at one point in the proceedings." *Petition of Harley & Browne*, 957 F. Supp. 44, 48 (S.D.N.Y. 1997); *see also Fontana v. Republic of Argentina*, 962 F.3d 667, 674 (2d Cir. 2020) ("New York law therefore unambiguously holds that an attorney's lien, once attached to the client's cause of action, also attaches to a subsequent settlement, whether or not the attorney is involved in the settlement itself.").

Xie argues that she terminated Bluestone for cause on May 6, 2021 because he "missed the court dismissal deadline of 5/3/21 to file [an] extension" to restore the case and "refused to perform his duties prior to and after he missed the deadline." (ECF No. 68 at 1; *see also id.* at 7.) Xie also claims that Bluestone coerced her into accepting the 2021 settlement amount by threatening to withdraw if she did not accede to its terms. (ECF No. 72 at 2; ECF No. 74 ¶ 6.) Bluestone categorically denies these accusations. (ECF No. 73 at 2; *see* ECF No. 83 ¶¶ 16-17.) As a threshold matter, the Court finds it difficult to credit Xie's allegations of coercion, which are unsupported by the record and which Xie raised for the first time eight months after the settlement amount was reached. (*See* ECF No. 78 at 6.) At most, the exhibits attached by Xie indicate that, despite repeated directives from Xie, Bluestone refused to seek another extension to restore the case on the basis that Xie's "position on language in the settlement agreement is frivolous and contrary to what the Judge told [her] was the norm or the acceptable language." (ECF No. 68 at 9; *id.* at 7-13.) But "attorneys are not expected to do that which is futile." *Diallo v. United States*, No. 12-CV-3310, 2014 WL 4460364, at *5 (S.D.N.Y. Sep. 10, 2014) (quotation marks omitted). And after months of languishing negotiations between the parties and Xie's insistence on new and increasingly broad settlement language, Bluestone was not unreasonable

in thinking that seeking yet another extension would yield little progress in moving discussions forward. Moreover, the Court made clear during a conference in September 2021—which addressed in part Bluestone's request for a charging lien—that Bluestone's failure to seek an extension "ha[d] no prejudice to [Xie]" because the Court had closed the case only administratively. (ECF No. 78 at 4.)

To be sure, Bluestone's correspondence with Xie was at times curt and dismissive of her repeated inquiries. But on this record, the Court sees no evidence of impropriety or misconduct by Bluestone that would warrant denial of a charging lien. *See Gurry v. Glaxo Wellcome, Inc.*, No. 98-CV-6243, 2000 WL 1702028, at *2 (S.D.N.Y. Nov. 14, 2000) ("Where an attorney is discharged not because he or she neglected to properly represent the client but because of personality conflicts, misunderstandings or differences of opinion having nothing to do with any impropriety by the lawyer, the discharge is not 'for cause' and the attorney does not forfeit his or her fee." (cleaned up)). Accordingly, the Court concludes that Xie did not fire Bluestone "for cause" and that Bluestone is entitled to the reasonable value of the services he rendered.

## VI. Conclusion

For the foregoing reasons, Defendants' motion to enforce the settlement and Bluestone's request for a charging lien are GRANTED. Because Bluestone does not request a specific amount as to fees, he is directed to submit a declaration or affidavit within fourteen days of the date of this order identifying the amount of the lien sought and the basis for such an amount. Xie may submit a response within fourteen days of the filing of Bluestone's declaration or affidavit.

The Clerk of Court is directed to close the motions at ECF Numbers 180, 189, and 192.

SO ORDERED.

Dated: August 17, 2026
New York, New York

J. PAUL OETKEN
United States District Judge